# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**DANIEL STOJANOVIC, JR.,**

Plaintiff,

v.                                                    **Case No. 16-CV-1292**

**NANCY A. BERRYHILL,**
*Acting Commissioner of the*
*Social Security Administration,*

Defendant.

---

## DECISION AND ORDER

---

Daniel Stojanovic, Jr., alleges that he became disabled on February 6, 2011, as a result of a number of physical and mental impairments. After the Social Security Administration (SSA) denied his applications for disability benefits, Mr. Stojanovic requested and received a hearing before an administrative law judge (ALJ). The ALJ determined that Mr. Stojanovic was capable of working notwithstanding his impairments. Mr. Stojanovic now seeks judicial review of that decision.

Mr. Stojanovic argues that the ALJ erred in relying on a vocational expert's testimony at step five and in refusing to allow his mother to testify at the administrative hearing. The Commissioner contends that the ALJ did not commit an error of law in reaching his decision and that the decision is otherwise supported by substantial evidence. For the reasons that follow, the Court finds that the ALJ

failed to develop a full and fair record when he excluded the testimony of Mr. Stojanovic's mother. The Court therefore will reverse the ALJ's decision and remand for further proceedings.

## I.    Background

Daniel Stojanovic, Jr., was born on November 28, 1974. Transcript 321, ECF Nos. 12-2–12-11. He took special education classes throughout his schooling and graduated from high school in 1993. Tr. 373–74. After completing a job-training program, Mr. Stojanovic secured a position at Bally Total Fitness doing cleaning. He worked full time for fifteen years before being laid off when the company hired a new cleaning crew. In 2011 and 2012, Mr. Stojanovic worked part time at TJ Maxx doing cleaning and stocking, but he stopped working following surgery on his right foot. Tr. 58–62. Mr. Stojanovic is single, and he has never lived on his own. Tr. 64, 373–74. As of January 2015, Mr. Stojanovic was living at his mother's house in St. Francis, Wisconsin, with his mother and brother. Tr. 29, 64–65. He was 5'9'' tall and weighed 352 pounds. Tr. 60.

Mr. Stojanovic suffers from depression, anxiety, poor vision, and issues with his right foot. Tr. 281. In July 2012, he filed applications for disability insurance benefits and supplemental security income, alleging that his disability began on May 1, 2006. Tr. 239–51. After the Social Security Administration denied his applications initially, Tr. 103–28, and upon reconsideration, Tr. 129–58, Mr. Stojanovic requested a hearing before an administrative law judge, Tr. 41–48, 185–213, 223, 229–38.

The administrative hearing was held on January 27, 2015, before ALJ Patrick J. Toal. *See* Tr. 49–102. Mr. Stojanovic was represented by counsel at the hearing. *See* Tr. 49, 163–64. The ALJ heard testimony from Mr. Stojanovic; Ajit Haldipur Janardhan, M.D., Ph.D., an impartial medical expert; and Timothy Tansey, Ph.D., C.R.C., C.V.E., an impartial vocational expert. *See* Tr. 57–98; *see also* Tr. 224–28, 214–15. The ALJ, however, did not permit testimony from Mr. Stojanovic's mother, Luise Stojanovic. *See* Tr. 79–81, 98–101. At the hearing, Mr. Stojanovic amended his alleged onset date to February 6, 2011. Tr. 56–57.

The ALJ followed the five-step sequential evaluation process and on February 3, 2015, he issued a decision unfavorable to Mr. Stojanovic. Tr. 9–27. The ALJ determined that (1) Mr. Stojanovic did not engage in substantial gainful activity since his amended alleged onset date; (2) Mr. Stojanovic suffered from five "severe" impairments: obesity, right foot deformities, right knee changes, vision abnormalities, and elements of an anxiety disorder and a learning disorder; (3) Mr. Stojanovic did not suffer from an impairment or combination of impairments that met or medically equaled the severity of a presumptively disabling impairment; Mr. Stojanovic had the residual functional capacity (RFC) to perform unskilled sedentary work with certain physical and mental restrictions; (4) Mr. Stojanovic could not perform his past relevant work as a locker-room attendant; and (5) Mr. Stojanovic remained capable of performing the requirements of various unskilled, sedentary occupations. *See* Tr. 12–21. Based on those findings, the ALJ concluded that Mr. Stojanovic was not disabled.

Thereafter, the Appeals Council denied Mr. Stojanovic's request for review, Tr. 1–6, making the ALJ's decision the final decision of the Commissioner of Social Security, *see Loveless v. Colvin*, 810 F.3d 502, 506 (7th Cir. 2016).

Mr. Stojanovic filed this action on September 27, 2016, seeking judicial review of the Commissioner's decision under 42 U.S.C. § 405(g). *See* Complaint, ECF No. 1. The matter was reassigned to this Court after the parties consented to magistrate judge jurisdiction. *See* Consent to Proceed Before a U.S. Magistrate Judge, ECF Nos. 4, 8 (citing 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b)). It is now fully briefed and ready for disposition. *See* Plaintiff's Brief, ECF No. 13; Defendant's Memorandum in Support of the Commissioner's Decision; ECF No. 16; Plaintiff's Reply Brief, ECF No. 17; and Plaintiff's Supplemental Brief, ECF No. 19.

## II.    Standard of Review

"Judicial review of Administration decisions under the Social Security Act is governed by 42 U.S.C. § 405(g)." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010)). Pursuant to sentence four of § 405(g), federal courts have the power to affirm, reverse, or modify the Commissioner's decision, with or without remanding the matter for a rehearing.

Section 205(g) of the Act limits the scope of judicial review of the Commissioner's final decision. *See* § 405(g). As such, the Commissioner's findings of fact shall be conclusive if they are supported by "substantial evidence." *See* § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th

Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)) (other citations omitted). The ALJ's decision must be affirmed if it is supported by substantial evidence, "even if an alternative position is also supported by substantial evidence." *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004) (citing *Arkansas v. Oklahoma*, 503 U.S. 91, 113 (1992)).

In reviewing the record, courts "may not re-weigh the evidence or substitute [their] judgment for that of the ALJ." *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (citing *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003)). Rather, reviewing courts must determine whether the ALJ built an "accurate and logical bridge between the evidence and the result to afford the claimant meaningful judicial review of the administrative findings." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) (citing *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001)). The ALJ's decision must be reversed "[i]f the evidence does not support the conclusion." *Beardsley*, 758 F.3d at 837 (citing *Blakes*, 331 F.3d at 569). Likewise, reviewing courts must remand "[a] decision that lacks adequate discussion of the issues." *Moore*, 743 F.3d at 1121 (citations omitted).

Reversal also is warranted "if the ALJ committed an error of law or if the ALJ based the decision on serious factual mistakes or omissions," regardless of whether the decision is otherwise supported by substantial evidence. *Beardsley*, 758 F.3d at 837 (citations omitted). An ALJ commits an error of law if his decision "fails to comply with the Commissioner's regulations and rulings." *Brown v. Barnhart*,

298 F. Supp. 2d 773, 779 (E.D. Wis. 2004) (citing *Prince v. Sullivan*, 933 F.2d 598, 602 (7th Cir. 1991)). Reversal is not required, however, if the error is harmless. *See, e.g.*, *Farrell v. Astrue*, 692 F.3d 767, 773 (7th Cir. 2012); *see also Keys v. Barnhart*, 347 F.3d 990, 994–95 (7th Cir. 2003) (citations omitted).

## III. Discussion

Mr. Stojanovic maintains that he is disabled and that the Commissioner's decision to the contrary is not supported by substantial evidence and is contrary to law. *See* Compl. He asks the Court to reverse the ALJ's decision and award benefits; alternatively, he seeks remand of the matter to the Commissioner for further proceedings. *See* Pl.'s Br. 12.

### A. Legal framework

Under the Social Security Act, a person is "disabled" only if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. §§ 416(i)(1) and 423(d)(1)(A). The disability must be sufficiently severe that the claimant cannot return to his prior job and is not capable of engaging in any other substantial gainful work that exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

In determining whether a person is disabled, the SSA must follow a five-step sequential evaluation process, asking, in order: (1) whether the claimant has engaged in substantial gainful activity since his alleged onset of disability;

(2) whether the claimant suffers from a medically determinable impairment or combination of impairments that is severe; (3) whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal the criteria of any impairment listed in the Act's regulations as presumptively disabling; (4) whether the claimant's RFC leaves him unable to perform the requirements of his past relevant work; and (5) whether the claimant is unable to perform any other work. *See* 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1.

An affirmative answer at either step three or step five leads to a finding that the claimant is disabled. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005). "The claimant bears the burden of proof at steps one through four." *Id.* Once the claimant shows an inability to perform past work, the burden then shifts to the Commissioner to show the claimant's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## B. Legal analysis

Mr. Stojanovic argues that the ALJ erred in concluding that a significant number of jobs existed in the economy that he could perform and in refusing to allow third-party lay witness testimony at the administrative hearing. The Court will address each argument in turn.

### 1. Whether the ALJ erred in relying on the vocational expert's testimony

At step five, the ALJ considers whether the claimant is capable of making an adjustment to other work given his age, education, work experience, and RFC.

§ 404.1520(a)(4)(v); § 416.920(a)(4)(v). A claimant is not disabled if work that he can do exists in significant numbers in the national economy—that is, in the region where the claimant lives or in several other regions of the country. *See* 42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. § 404.1566(a)–(b); 20 C.F.R. § 416.966(a)–(b). It does not matter whether work exists in the immediate area in which the claimant lives, whether a specific job vacancy exists for the claimant, or whether the claimant would be hired if he applied. § 404.1566(a); § 416.966(a).

The vocational expert in this case testified that a person with Mr. Stojanovic's age, education, work experience, and RFC would still be capable of performing various unskilled, sedentary jobs. Tr. 95–97. He provided three examples: a stuffer, a waxer, and a washroom operator. According to the vocational expert, in Wisconsin there are approximately 400 stuffer positions, 300 waxer positions, and 250 washroom operator positions. The ALJ relied on the vocational expert's testimony at step five when he concluded that Mr. Stojanovic "would be capable of making a successful adjustment to other jobs existing in significant numbers in the national economy." Tr. 20–21.

Mr. Stojanovic attacks the ALJ's reliance on the vocational expert's testimony on several grounds. He first maintains that the number of jobs estimated by the vocational expert are far too limited to be considered a significant number of jobs in the national economy. Pl.'s Br. 5–7 Mr. Stojanovic also contends that the vocational expert failed to estimate the number of jobs that existed in the nation as a whole, failed to identify the source of the figures he provided, and failed to vouch for the

accuracy of his data. *Id.* at 6–8 (citing *Browning v. Colvin*, 766 F.3d 702, 708–09 (7th Cir. 2014) and *Herrmann v. Colvin*, 772 F.3d 1110, 1112–14 (7th Cir. 2014)).

Mr. Stojanovic's arguments are unavailing. According to the Seventh Circuit, "[a]s few as 174 jobs has been held to be significant, and it appears to be well-established that 1,000 jobs is a significant number." *Liskowitz v. Astrue*, 559 F.3d 736, 744 (7th Cir. 2009) (collecting cases). Here, the total number of positions estimated by the vocational expert was 950. If 1,000 positions is clearly a significant number, then it stands to reason that 950 positions is as well. Moreover, the vocational expert testified that his list of potential jobs was not exhaustive—that is, "there would be more" jobs Mr. Stojanovic could perform. Tr. 97. An inclusive figure, therefore, would be well over 1,000. And if a significant number of jobs existed in Wisconsin—the region where Mr. Stojanovic lived—then *a fortiori* a significant number of jobs existed in the nation as a whole. *See* § 404.1566(a) ("We consider that work exists in the national economy when it exists in significant numbers either in the region where you live or in several other regions of the country."); § 416.966(a) (same).

Furthermore, Mr. Stojanovic has forfeited his arguments concerning the source and accuracy of the vocational expert's figures because he failed to address those issues during the administrative hearing. Mr. Stojanovic's lawyer in this action is the same lawyer who represented him at the administrative level. At the hearing, Mr. Stojanovic's lawyer had no objection to the vocational expert's

qualifications, Tr. 91, disclaimed a need for DOT[1] numbers regarding the jobs the expert identified, Tr. 96, and asked the expert only three questions, all of which simply confirmed that the identified jobs were sedentary (i.e., were performed sitting down), Tr. 98. Mr. Stojanovic's lawyer had the opportunity to challenge the vocational expert's figures, but he chose not to.

As it stands, the vocational expert's testimony "was both unobjected to and uncontradicted"; thus, the ALJ was entitled to credit it. *See Brown v. Colvin*, 845 F.3d 247, 254 (7th Cir. 2016) (finding that claimant forfeited arguments regarding the vocational expert's data by failing to object to her testimony during the administrative hearing); *Liskowitz*, 559 F.3d at 744 (same); *Barrett v. Barnhart*, 355 F.3d 1065, 1067 (7th Cir. 2004) ("[B]ecause [the claimant's] lawyer did not question the basis for the vocational expert's testimony, purely conclusional though that testimony was, any objection to it is forfeited."); *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002) ("When no one questions the vocational expert's foundation or reasoning, an ALJ is entitled to accept the vocational expert's conclusion."). Consequently, Mr. Stojanovic's reliance on *Browning* and *Herrmann* is misplaced.

Even if the merits of this argument are considered, it is unavailing because Mr. Stojanovic has not presented any evidence to contradict the vocational expert's testimony. Accordingly, the Court finds that the ALJ did not commit reversible

---

[1] The DOT, which stands for *Dictionary of Occupational Titles*, is a journal published by the United States Department of Labor that "provides occupational information about myriad jobs in the U.S. economy." *Brown v. Colvin*, 845 F.3d 247, 250 (7th Cir. 2016).

error in relying on the vocational expert's testimony when he concluded that Mr. Stojanovic is capable of adjusting to other work.

### 2. Whether the ALJ erred in refusing to allow third-party testimony

ALJs have "a basic obligation . . . to develop a full and fair record," *Smith v. Sec'y of Health, Educ. & Welfare*, 587 F.2d 857, 860 (7th Cir. 1978), but reviewing courts "generally uphold[] the reasoned judgment of the Commissioner on how much evidence to gather," *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009) (citing *Luna v. Shalala*, 22 F.3d 687, 692 (7th Cir. 1994); *Binion v. Shalala*, 13 F.3d 243, 246 (7th Cir. 1994)). When a claimant is represented by counsel at the administrative level, the ALJ is "'entitled to assume'" that he "is making his 'strongest case for benefits.'" *Wilkins v. Barnhart*, 69 F. App'x 775, 781 (7th Cir. 2003) (quoting *Glenn v. Sec'y of Health & Human Servs.*, 814 F.2d 387, 391 (7th Cir. 1987)). "Moreover, a significant omission is usually required before [reviewing courts] will find that the [Commissioner] failed to assist *pro se* claimants in developing the record fully and fairly." *Luna*, 22 F.3d at 692 (citing *Thompson v. Sullivan*, 933 F.2d 581, 586–88 (7th Cir. 1991)). "In other words, the omission must be prejudicial." *Nelson v. Apfel*, 131 F.3d 1228, 1235 (7th Cir. 1997).

"Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand." *Binion*, 13 F.3d at 246 (citing *Granger v. Finch*, 425 F.2d 206, 208–09 (7th Cir. 1970)). "[T]here must be a showing of prejudice before [the court] will find that the claimant's right to due process has been violated to such a degree that the case must be remanded to the

[Commissioner] for further development of the record." *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995) (citing *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985)).

Due to time constraints, the ALJ here denied Mr. Stojanovic's request to have his mother testify at the administrative hearing. *See* Tr. 79–81, 98–101. The ALJ explained that Mr. Stojanovic had not identified his mother as a potential witness in his pre-hearing brief and that, prior to allowing third-party testimony, the ALJ required a proffer of what the witness intended to say. Mr. Stojanovic's lawyer never attempted to make such a proffer at the hearing. Instead, he argued with the ALJ about the alleged notice requirement and claimed not to have received a full hearing.

Mr. Stojanovic argues that his due process rights were violated when the ALJ refused to allow his mother to testify on his behalf. *See* Pl.'s Br. 8–12; Pl.'s Reply; and Pl.'s Suppl. Br. According to Mr. Stojanovic, his mother's testimony was crucial to his claim given his "limited cognitive abilities and the impact of same on his ability to adequately express his limitations of function." Pl.'s Br. 12. Specifically, his mother was prepared to testify that

    1. Her son is unable to figure out even basic things and needs her continual assistance.

    2. She needs to take him wherever he needs to go. He is too nervous and timid to go by himself.

    3. His movements are very slow and hesitant because he has trouble focusing when he looks around.

4. He is unable to read without holding what he is reading 2 to 3 inches from his eyes.

*See* Pl.'s Suppl. Br. The Commissioner did not respond to this proffer.

The ALJ's refusal to allow Mr. Stojanovic's mother to testify at the administrative hearing constituted a violation of his duty to develop a full and fair record. The record demonstrates that Mr. Stojanovic is cognitively delayed. *See* Tr. 373–76. He received special education services throughout his schooling and has been diagnosed with a learning disability. His full-scale IQ (79) reflects borderline intellectual functioning, though many of his individual scores were in the low-average range. Mr. Stojanovic has never lived alone, and he does not have any age-appropriate peer relationships; his interactions are limited almost exclusively to his family. The psychological examiner also noted social and emotional immaturity. A reading of the administrative hearing transcript further confirms those limitations. *See* Tr. 57–75.

The testimony of Mr. Stojanovic's mother certainly would have helped fill in evidentiary gaps relating to Mr. Stojanovic's cognitive limitations. The transcript shows that Mr. Stojanovic does not fully appreciate the severity of his limitations. His mother was present at the hearing and had lived with him for nearly his entire life. Consequently, the elder Stojanovic was in far better position to explain her son's functional capabilities and how his impairments impact his day-to-day life. Mr. Stojanovic's mother claims that her son relies on her for his most basic needs and needs her continual assistance. As such, the ALJ's refusal to hear from her was prejudicial to Mr. Stojanovic.

The Commissioner faults Mr. Stojanovic's lawyer for not seeking a continuance or explaining at the hearing why the mother's testimony was crucial. *See* Def.'s Mem. 5–6. To be sure, Mr. Stojanovic's lawyer could have conducted himself in a more professional manner. Rather than engage in a back-and-forth with the ALJ, he could have simply made the proffer. From the transcript, however, it appears that any such attempt would have been futile; the ALJ was not going to allow Mr. Stojanovic's mother to testify.

## IV.  Conclusion

For all the foregoing reasons, the Court finds that the ALJ erred when he refused to allow Mr. Stojanovic's mother to testify at the administrative hearing. Based on this record, however, the Court cannot determine whether Mr. Stojanovic was disabled as of February 2011. Accordingly, the Court concludes that it is necessary to remand this matter to the Commissioner for a new hearing at which the mother is permitted to testify.

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the Commissioner's decision is **REVERSED**.

**IT IS FURTHER ORDERED** that this action is **REMANDED** to the Commissioner pursuant to sentence four of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), for further proceedings consistent with this Decision and Order.

**FINALLY, IT IS ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this <u>20th</u> day of March, 2018.

**BY THE COURT:**

<u>*s/ David E. Jones*</u>
DAVID E. JONES
United States Magistrate Judge